IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN,<br><br>        Plaintiff,<br><br>    v.<br><br>FORTRESS BIOTECH, INC., LINDSAY A. ROSENWALD, ERIC K. ROWINSKY, JIMMIE HARVEY, JR., MALCOLM HOENLEIN, DOV KLEIN, J. JAY LOBELL, KEVIN L. LORENZ, and MICHAEL S. WEISS,<br><br>        Defendants. | No. 20-cv-2262 |

## COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Shiva Stein ("Plaintiff") brings this Complaint for Violation of Federal Securities Laws ("Complaint") against Fortress Biotech, Inc. ("Fortress" or the "Company") and the members of its board of directors (the "Board"), namely: Lindsay A. Rosenwald, Eric K. Rowinsky, Jimmie Harvey, Jr., Malcolm Hoenlein, Dov Klein, J. Jay Lobell, Kevin L. Lorenz, and Michael S. Weiss (collectively, the "Individual Defendants" and, together with Fortress, "Defendants"). Plaintiff's allegations are based upon the knowledge of Plaintiff as to herself and upon information and belief, including the investigation conducted by her undersigned attorneys and a review of public information, news reports, and documents filed with the U.S. Securities and Exchange Commission ("SEC").

## INTRODUCTION

1. Plaintiff brings this action against Defendants to remedy the omission of a material fact from proxy statement disseminated by Fortress in advance of its annual meeting of stockholders presently scheduled for June 17, 2020 (the "Annual Meeting").

2. On April 27, 2020, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in which the Company and Board are soliciting stockholder approval of,

*inter alia*, two amendments to the Company's Amended and Restated Certificate of Incorporation (the "Certificate"), which would: (i) increase the number of authorized shares of the Company's Common Stock from 100,000,000 to 150,000,000; and (ii) change the dividend payment date for 9.375% Series A Cumulative Redeemable Perpetual Preferred Stock ("Preferred Stock") from quarterly to monthly (together, the "Certificate Proposals").

3. In the Proxy, however, Defendants do not disclose whether banks, brokers, or other nominees ("Brokers") who hold shares on behalf of beneficial stockholders have discretion to vote such shares on the Certificate Proposals if they do not receive voting instructions from the beneficial holders of the shares.

4. Whether Brokers have discretion to vote uninstructed shares is material information because Brokers hold a significant portion of Fortress stock on behalf of beneficial owners. These beneficial stockholders are currently left in the dark regarding the effect their shares will have on the Certificate Proposals if they do not give specific voting instructions to their Brokers; *i.e.*, absent amendment of the Proxy, stockholders do not know whether their Brokers will be able to vote uninstructed shares on the Certificate Proposals.

5. Moreover, based on the high numbers of uninstructed shares at the Company's previous meetings of stockholders, the question of whether Brokers have discretion to vote uninstructed shares on the Certificate Proposals may well determine whether they are approved. In other words, if Brokers have discretion to vote uninstructed shares, the Certificate Proposals are likely to be approved, because Brokers typically support proposals endorsed by companies and their boards of directors. Conversely, if Brokers do not have such discretion, the Certificate Proposals are not likely to carry.

6. Plaintiff therefore seeks to enjoin the votes on the Certificate Proposals scheduled

to be held at the Annual Meeting until after Defendants disclose the material information omitted from the Proxy.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78aa].

8. In connection with the acts, omissions, conduct, and wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

9. Venue is proper because many of the acts and conduct complained of herein, including dissemination of the Proxy, occurred in this District.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

## PARTIES

**I. PLAINTIFF**

11. Plaintiff is, and has continuously been, a Fortress stockholder at all relevant times and is entitled to vote at the Annual Meeting.

**II. DEFENDANTS**

12. Defendant Fortress is a Delaware corporation which maintains its principal executive offices at 2 Gansevoort Street, 9th Floor, New York, New York 10014.

13. Defendant Lindsay A. Rosenwald, M.D. has been a Fortress director since October 2009 and currently serves as the Company's Chairman, President, and Chief Executive

Officer.

14. Defendant Eric K. Rowinsky, M.D. has been a Fortress director since October 2010.

15. Defendant Jimmie Harvey, Jr., M.D. has been a Fortress director since December 2008.

16. Defendant Malcolm Hoenlein has been a Fortress director since February 2014.

17. Defendant Dov Klein, CPA has been a Fortress director since July 2015.

18. Defendant J. Jay Lobell has been a Fortress director since June 2006.

19. Defendant Kevin L. Lorenz, J.D. has been a Fortress director since August 2019.

20. Defendant Michael S. Weiss has been a Fortress director since December 2013.

## FURTHER SUBSTANTIVE ALLEGATIONS

21. On April 27, 2020, the Company filed the Proxy with the SEC in advance of the Annual Meeting scheduled for June 17, 2020.

22. Through the Proxy, Defendants are soliciting stockholder approval of the Certificate Proposals.

23. Per the Proxy, for the Certificate Proposals to carry, a majority of all outstanding shares (not just a majority of the shares voted) must be voted "For" the Certificate Proposals. Specifically, Defendants stated:

> The affirmative vote of a majority of the outstanding shares of the Company's Common Stock is required to approve the [Certificate Proposals]. Abstentions, broker or nominee non-votes, and shares represented by proxies reflecting broker or nominee non-votes, will have the same effect as a negative vote.

(Proxy at 4).

24. Because there were 81,391,206 shares of Fortress common stock outstanding as of April 20, 2020, the record date for the Annual Meeting, 40,695,604 shares must be voted in

favor of the Certificate Proposals for them to carry.

25. Despite disclosing the effect of broker or nominee non-votes, Defendants do not disclose whether Brokers have discretionary authority to vote uninstructed shares on the Certificate Proposals. A significant portion—if not a majority—of Fortress stockholders are beneficial stockholders with Brokers who act as the actual stockholder of record. To vote shares held in street name, beneficial stockholders instruct their Brokers how to vote. If a stockholder does not give voting instructions, that stockholder's Broker may have discretion to vote the stockholder's shares depending on whether the proposal is "routine" or "non-routine". Brokers have no discretionary authority to vote shares with respect to "non-routine" proposals and, and a "broker non-vote" is recorded for each such uninstructed share. With respect to "routine" proposals, conversely, Brokers have authority to vote uninstructed shares within and pursuant to their discretion. In rare cases, Brokers may decide not to exercise such discretion and a broker non-vote(s) will be recorded on a routine proposal.[1]

26. The effect of a broker non-vote depends on both the matter being voted upon and company-specific voting standards. If a proposal requires only approval by a majority of the votes cast, then broker non-votes will have no effect. However, if a proposal requires the approval of a majority of all stockholders (*i.e.*, all outstanding shares), such as the Certificate Proposals do, then broker non-votes have the same effect as votes against the proposal.

27. Because of the significant impact Broker voting of uninstructed shares can have, various self-regulatory organizations have enacted rules controlling the circumstances in which Brokers can vote uninstructed shares. *See*, *e.g.*, New York Stock Exchange Listed Company

---

[1] The Company has had at least one routine proposal at each of its annual meetings of stockholders since 2014. Brokers have not recorded a single broker non-vote on any of these proposals and have always voted uninstructed shares in the affirmative.

Manual § 402.08 (specifying when Brokers may vote without beneficial stockholder instructions); Financial Industry Regulatory Authority Rule 2251 (prohibiting members from voting any uninstructed shares unless a member is following the rules of another self-regulatory organization, such as the New York Stock Exchange); NASDAQ General Equity and Options Rules, General 9, Section 6 ("Nasdaq Members shall comply with FINRA Rule 2251 as if such Rule were part of Nasdaq's Rules."). As the self-regulatory organizations recognize, adequate disclosure is a condition precedent to authorized discretionary voting of uninstructed shares by Brokers.

28. As the Proxy currently stands, Fortress stockholders do not know whether the Certificate Proposals are routine or non-routine – *i.e.*, whether their Brokers have discretionary authority to vote uninstructed votes. Without knowing whether Brokers have discretionary authority, stockholders do not know the consequences of inaction. If the Certificate Proposals are routine matters, then stockholders who wish to vote against them must affirmatively instruct their Brokers, as Brokers are likely to vote uninstructed shares for approval of the Certificate Proposals. Conversely, if the Certificate Proposals are non-routine matters, then stockholders who wish to vote against them do not need to do anything, while stockholders who wish to vote for them must affirmatively instruct their Brokers to affirmatively vote their shares.

29. Moreover, whether Certificate Proposals are routine or non-routine matters is likely to be outcome determinative. Left to their own discretion, Brokers typically vote in favor of management's recommendation, which here is to vote in favor of the Certificate Proposals. This means that if the Certificate Proposals are routine matters, then Brokers are likely to vote in their favor and they will likely carry. Conversely, if the Certificate Proposals are non-routine matters, then broker non-votes will be recorded for uninstructed shares and, resultingly, the

Proposals are likely to be rejected.

30.    The vote at the Company's June 18, 2019 stockholder meeting, the Company's most recent stockholder meeting, is illustrative of this issue. At that meeting, the Company sought stockholder approval of the compensation of Fortress's executive officers. A majority of shares present or represented at the meeting and entitled to vote on the proposal were cast for the proposal. However, only 46% of the Company's total outstanding shares affirmatively were voted in favor of this compensation proposal, and 22,767,565 "Broker Non-Votes"[2], representing 35% of Company's then outstanding shares, were recorded. This means that if the stockholder participation rate at the Annual Meeting is the same as at the previous stockholder meeting, it is unlikely that the Certificate Proposals will be approved if they are deemed "non-routine" matters. In contrast, if Brokers do have discretionary authority to vote uninstructed shares, then the Certificate Proposals are likely to be approved. Had Brokers had such discretionary authority with respect to the executive compensation proposal at the June 18, 2019 stockholder meeting, then about 81% of the outstanding shares would have likely been voted in favor of the proposal. In fact, a proposal to ratify the appointment of the Company's independent public accounting firm, the only routine matter at the June 2019 stockholder meeting, was approved by approximately 85% of the outstanding shares. This number was achieved because Brokers, exercising their discretionary authority, voted all 22,767,565 uninstructed shares in the affirmative.

31.    Furthermore, looking at the Company's previous stockholder votes, it is possible that one of the Certificate Proposals is routine and one is non-routine, meaning that inaction by stockholders could lead to different votes on the Certificate Proposals. The last time the

---

[2] The proposal required only a majority of votes cast for approval and carried on that basis.

Company sought stockholder approval of an amendment to the Certificate to increase the number of authorized shares was at the Company's 2013 stockholder meeting, and the proposal was a routine proposal. Conversely, the last time the Company sought stockholder approval of an amendment to the Certificate to modify the terms of its Preferred Stock was at the Company's 2018 stockholder meeting, and the proposal was a non-routine matter.

32. The 2018 Preferred Stock proposal demonstrated the effect that routine/non-routine distinction can have on the outcome of a stockholder vote. That proposal failed precisely because it was non-routine. It received 23,826,875 "For" votes, which was less than the 26,472,733 "For" votes necessary for approval. 22,581,704 "broker non-votes" were recorded, each of which had the same effect as an "Against" vote. Had the proposal been a routine matter, each of the 22,581,704 "broker non-votes" recorded at the 2018 stockholder meeting would almost certainly have been cast as "For" votes and the proposal would have passed with 46,408,579 "For" votes.

## CLAIMS FOR RELIEF

### COUNT I
Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder
*(against All Defendants)*

33. Plaintiff realleges each allegation pleaded above.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, were false and misleading and failed to include all material information. Fortress is liable as the issuer of these statements.

35. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants, who were aware of the information set forth therein. By virtue of their positions within the Company, the Individual Defendants had a duty to disclose accurate information in

the Proxy.

36. The Individual Defendants were at least negligent in filing the Proxy without disclosing whether the Certificate Proposals were routine or non-routine matters.

37. Whether the Certificate Proposals are routine or non-routine is material information that a reasonable stockholder would consider important in deciding whether and/or how to vote on the Certificate Proposals. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Certificate Proposal.

39. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements and omissions in the Proxy, Plaintiff and the stockholders are threatened with irreparable harm.

**COUNT II**
BREACH OF FIDUCIARY DUTY
*(against the Individual Defendants)*

41. Plaintiff realleges each allegation pleaded above.

42. The Individual Defendants owe fiduciary duties to Fortress stockholders, including the duties of care, disclosure, good faith, and loyalty.

43. By virtue of their positions as directors of Fortress and/or their exercise of control and ownership over the business and corporate affairs of the Company, the Individual Defendants have, and at all relevant times during their respective tenures on the Board had, the power to control and influence and did control and influence and cause the Company to engage

in the practices complained of herein. Each Individual Defendant was required to cause the Company to comply with Delaware law when issuing disclosures.

44. The Individual Defendants breached their fiduciary duties by issuing the Proxy, which fails to disclose all material information with respect to the Certificate Proposals.

45. As a result of these actions of the Individual Defendants, Plaintiff and the stockholders have been and will be injured.

## COUNT III
### DECLARATORY RELIEF
*(against All Defendants)*

46. Plaintiff incorporates by reference and realleges each allegation set forth above.

47. The facts and circumstances pleaded herein have given rise to an actual controversy which currently exists between Plaintiff, on one hand, and Defendants, on the other hand, concerning their respective rights and duties under federal and Delaware law.

48. By improperly omitting whether the Certificate Proposals are routine or non-routine votes, Defendants have denied Plaintiff and other Fortress stockholders full and accurate disclosure of information material concerning their votes on the Certificate Proposals.

49. Plaintiff desires a judicial determination and declaration that the Proxy is false and misleading.

50. A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiff and the stockholders will receive full and accurate disclosures concerning the Certificate Proposals prior to the stockholder votes set to take place at the Annual Meeting.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of an order:

A. A declaration that the Proxy is materially false and misleading;

B. Enjoining the stockholder votes on the Certificate Proposals until such time as Defendants have corrected the false and misleading statements and omissions in the Proxy and otherwise made full disclosure of all information material to the stockholders' votes on the Certificate Proposals;

C. Finding the Individual Defendants liable for breaching their fiduciary duties;

D. Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

E. Awarding such other and further relief as is just and equitable.

Dated: May 19, 2020                                    Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

OF COUNSEL:

**FIELDS KUPKA & SHUKUROV LLP**
William J. Fields (wfields@fksfirm.com)
Christopher J. Kupka (ckupka@fksfirm.com)
Samir Shukurov (sshukurov@fksfirm.com)
1370 Broadway, 5th Floor – #5100
New York, New York 10018
(T) 212.231.1500
(F) 646.851.0076

By: /s *Gloria Kui Melwani*_____
Gloria Kui Melwani
Benjamin Y. Kaufman
270 Madison Avenue
New York, NY 10016
(T) 212 545-4600
(F) 212-686-0114
melwani@whafh.com
kaufman@whafh.com

*Attorneys for Plaintiff*