**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>FORTRESS BIOTECH, INC., LINDSAY A. ROSENWALD, ERIC K. ROWINSKY, JIMMIE HARVEY, JR., MALCOLM HOENLEIN, DOV KLEIN, J. JAY LOBELL, KEVIN L. LORENZ, and MICHAEL S. WEISS, <br><br>　　　　　Defendants. | No. 20-cv- 2262 |

**OPENING MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Dated: May 19, 2020

OF COUNSEL:

**FIELDS KUPKA & SHUKUROV LLP**
William J. Fields (wfields@fksfirm.com)
Christopher J. Kupka (ckupka@fksfirm.com)
Samir Shukurov (sshukurov@fksfirm.com)
1370 Broadway, 5th Floor – #5100
New York, New York 10018
(T) 212.231.1500
(F) 646.851.0076

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani (melwani@whafh.com)
Benjamin Kaufman (kaufman@whafh.com)
270 Madison Avenue
New York, NY 10016
(T) 212 545-4600
(F) 212-686-0114

*Attorneys for Plaintiff*

Plaintiff Shiva Stein ("Plaintiff"), having moved this Court, via order to show cause, for entry of an order pursuant to Federal Rule of Civil Procedure 65, respectfully submits this memorandum of law in support of her motion.

## PRELIMINARY STATEMENT

At Fortress's annual meeting of stockholders presently scheduled for June 17, 2020 (the "Annual Meeting"), stockholders are slated to vote on two proposed amendments to Fortress Biotech, Inc.'s ("Fortress" or the "Company") Amended and Restated Certificate of Incorporation (the "Certificate"). One amendment would increase the number of authorized shares of Fortress common stock from 100,000,000 to 150,000,000 (the "Share Increase Proposal"). The second amendment would change the dividend payment date for the 9.375% Series A Cumulative Redeemable Perpetual Preferred Stock ("Preferred Stock") from quarterly to monthly (the "Preferred Stock Proposal" and, together with the Share Increase Proposal, the "Certificate Proposals"). On April 27, 2020, Fortress filed a Schedule 14A Proxy Statement (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC") through which it is soliciting stockholder approval of the Certificate Proposals.

By her motion, Plaintiff is seeking entry of an order enjoining the stockholder votes on the Certificate Proposals. Plaintiff seeks an injunction because the Company has not disclosed whether banks, brokers, or other nominees ("Brokers") who hold shares on behalf of beneficial stockholders—*i.e.*, shares held in "street name"—have discretion to vote such shares on the Certificate Proposals if they do not receive voting instructions from the beneficial holders.

Brokers hold a significant portion of Fortress stock on behalf of beneficial owners and information concerning the action the former may take if the latter do not provide voting instructions is material. Beneficial stockholders are currently left in the dark as to whether their

Brokers will be able to vote uninstructed shares on the Certificate Proposals. Because they do not know the consequences of inaction, it follows that they do not know whether affirmative action is necessary. The Delaware Court of Chancery has confirmed that stockholders need to know whether they "actually have to take action to vote or whether inaction has a consequence."[1] Indeed, in this very case, whether Brokers can vote uninstructed shares on the Certificate Proposals may well determine whether they are approved, and yet this vital fact has not been disclosed.

Because stockholders need to know whether Brokers can vote uninstructed shares, whether they need to affirmatively provide voting instructions, and the consequences of inaction, Plaintiff seeks an injunction of the stockholder vote thereon until such time as Lindsay A. Rosenwald, Eric K. Rowinsky, Jimmie Harvey, Jr., Malcolm Hoenlein, Dov Klein, J. Jay Lobell, Kevin L. Lorenz, and Michael S. Weiss (collectively, the "Board") and Fortress (together with Fortress, "Defendants"), disclose whether the Certificate Proposals are routine or non-routine matters.

## STATEMENT OF FACTS

On April 27, 2020, the Company and the Board filed the Proxy, through which they are soliciting stockholder approval of the Certificate Proposals the Annual Meeting scheduled for June 17, 2020. (¶¶ 21-22).[2] As disclosed therein, a majority of all outstanding shares (not just a majority of the shares voted) must be voted "For" the Certificate Proposals for them to carry. (¶ 23). Specially, Defendants stated:

> The affirmative vote of a majority of the outstanding shares of the Company's

---

[1] Fortress is incorporated in Delaware and, therefore, Delaware law is applicable to its internal affairs such as voting rights. The internal affairs doctrine is a conflict of laws principle holding that only one state should have authority to regulate a corporation's internal affairs.  *Edgar v. MITE Corp*. 457 U.S. 624, 645 (1982).

[2] Citations to "¶ __" refer to Plaintiff's Verified Stockholder Class Action Complaint ("Complaint").

> Common Stock is required to approve the [Certificate Proposals]. Abstentions, broker or nominee non-votes, and shares represented by proxies reflecting broker or nominee non-votes, will have the same effect as a negative vote.

(*Id.* (quoting the Proxy at 4)). Because there were 81,391,206 shares of Fortress common stock outstanding as of the record date for the Annual Meeting, approval of each Certificate Proposal requires the affirmative vote of 40,695,604 shares. (¶ 24).

While defendants disclose the effect of broker or nominee non-votes, they do not disclose whether Brokers have discretionary authority to vote uninstructed shares on the Certificate Proposals in the first place. (¶ 25). A significant portion—if not a majority—of Fortress stockholders are beneficial stockholders with Brokers who act as the actual stockholder of record. (*Id.*). To vote shares held in street name, beneficial stockholders instruct their Brokers how to vote. If a stockholder does not give voting instructions, that stockholder's Broker may have discretion to vote the stockholder's shares depending on whether the proposal is "routine" or "non-routine". (*Id.*). Brokers have no discretionary authority to vote shares with respect to "non-routine" proposals and, if a beneficial stockholder does not provide voting instructions, then a "broker non-vote(s)" is automatically recorded. (*Id.*). With respect to "routine" proposals, conversely, Brokers have authority to vote uninstructed shares within and pursuant to their discretion. (*Id.*).

The effect that a broker non-vote has on a vote depends on the matter being voted upon, as well as company-specific voting standards. (¶ 26). If a proposal requires only approval by a majority of the votes cast, then broker non-votes will have no effect. (*Id.*). However, if a proposal requires the approval of a majority of all stockholders, such as the Certificate Proposals do, then broker non-votes have the same effect as votes against the proposal. (*Id.*).

In the Proxy, Defendants do not disclose whether the Certificate Proposals are routine or non-routine proposals or whether Brokers have discretion to vote uninstructed shares on the Certificate Proposals. (¶ 3). Disclosure of such material information is required under rules promulgated by self-regulatory organizations before Brokers can vote uninstructed shares.

## ARGUMENT

A movant seeking issuance of a preliminary injunction must satisfy four factors: (i) it is likely to succeed on the merits; (ii) it is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the balance of equities tips in the movant's favor; and (iv) an injunction is in the public interest. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). As demonstrated below, each of these factors is satisfied here.

**I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS BECAUSE WHETHER BROKERS HAVE DISCRETION TO VOTE UNINSTRUCTED SHARES IS MATERIAL.**

To satisfy the first prong of the four-part test, Plaintiff need only show that it is more likely than not that she will prevail on the merits. *Nat'l Elevator Cab & Door Corp v. H & B, Inc.*, 282 F. App'x 885, 888 (2d Cir. 2008) (movant "need only show that its probability of prevailing was 'better than 50 percent.'" (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985))).

Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Securities Exchange Act of 1934, prohibits proxy solicitation "by means of any proxy statement . . . containing any statement which, at the time and in the light of circumstances which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statement therein not false or misleading". 17 C.F.R. § 240.14a-

9(a); *see also* 15 U.S.C. § 78n(a). Similarly, Delaware law provides that directors "are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action."[3] *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citation omitted) (emphasis added); *see also St. Clair Shores Gen. Emples. Ret. Sys. V. Eibelier*, 745 F. Supp 2d 303, 310 (S.D.N.Y. 2010).

A fact is material if a reasonable stockholder would consider it important in deciding how to vote. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985). The "materiality standard is an objective one, measured from the point of view of the reasonable investor." *Zirn v. VLI Corp.*, 621 A.2d 773, 779 (Del. 1993). The materiality standard "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote." *TSC Indus.*, 426 U.S. at 449. Rather, the standard only requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.*

Whether the Certificate Proposals are routine or non-routine matters—*i.e.*, whether Brokers have discretionary authority to vote uninstructed shares on the Certificate Proposals—is material information. *See generally* New York Stock Exchange Listed Company Manual § 402.08 (requiring adequate disclosure before Brokers may vote without beneficial stockholder instructions); Financial Industry Regulatory Authority Rule 2251 (prohibiting members from voting any uninstructed shares unless a member is following the rules of another self-regulatory organization, such as the New York Stock Exchange); NASDAQ General Equity and Options Rules, General 9, Section 6 ("Nasdaq Members shall comply with FINRA Rule 2251 as if such

---

[3] Delaware substantive law applies to Plaintiff's breach of fiduciary duty claim because Fortress is a Delaware corporation. *Norman v. Elkin*, No. 06-005-JJF, 2007 U.S. Dist. LEXIS 72725, at *8-9 (D. Del. Sep. 26, 2007).

– 5 –

Rule were part of Nasdaq's Rules."). Without this information, stockholders do not know the consequences of inaction, information which the Delaware Court of Chancery has deemed "significant" to a stockholder deciding whether and/or how to vote. *See In re Galena Biopharma, Inc.*, No. 2017-0423, TRANSCRIPT at 72 (Del. Ch. June 14, 2018) (emphasis added) (attached as Exhibit B to the Declaration of Gloria Kui Melwani filed herewith ("Melwani Decl.")); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) ("A fact is material for purposes of Rule 14a-9 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" (quoting *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1090 (1991))).

If the Certificate Proposals are routine matters, then stockholders who wish to vote against them must affirmatively instruct their Brokers to that effect, as Brokers are likely to vote uninstructed shares for approval of the Certificate Proposals. Conversely, if the Certificate Proposals are non-routine matters, then stockholders who wish to vote against them do not need to do anything, while stockholders who wish to vote for them must provide affirmative instructions. In *Galena*, the Delaware Court of Chancery emphasized the importance of proper disclosure of this information:

> **I think we in Delaware have to believe that voting matters and that how people approach votes matter.**
>
> If you say something is nonroutine, then if you oppose it, you don't have to do anything. You don't have to go in and vote. If you say it's routine, then the brokers can vote. And so by not acting, you basically allow your broker to vote in favor. The opposite is true as well.
>
> So these disclosures, they're not mere formalities that don't matter. **They affect whether someone thinks that they actually have to take action to vote or whether inaction has a consequence.** So I think that even if this matter was limited to a disclosure issue, it still was something significant.

*Galena*, Melwani Decl. Ex. B at 71-72.

– 6 –

Furthermore, whether Certificate Proposals are routine or non-routine matters may prove outcome determinative. *See generally State of Wis. Inv. Bd. v. Peerless Sys. Corp.*, C.A. No. 17637-VCC, 2000 Del. Ch. LEXIS 170, at *12 (Del. Ch. Dec. 4, 2000) (explaining that Brokers have discretion to vote uninstructed shares on routine matters but not on non-routine matters and that this "often accounts for a higher number of votes on routine matters than on non-routine matters"). Left to their own discretion, Brokers typically vote in favor of management's recommendation. Here, Defendants have recommended that the Certificate Proposals be approved. This means that if the Certificate Proposals are routine matters, then Brokers are likely to vote to approve them and the Certificate Proposals will likely carry. Conversely, if they are non-routine matters, then broker non-votes will be recorded and the Certificate Proposals may well be rejected.

The vote at the Company's June 18, 2019 stockholder meeting, the Company's most recent stockholder meeting, is illustrative of this issue. At that meeting, the Company sought stockholder approval of the compensation of Fortress's executive officers. (¶ 30). A majority of shares present or represented at the meeting and entitled to vote on the proposal were cast for the proposal. (*Id.*). However, only 46% of the Company's total stockholders affirmatively voted in favor of this compensation proposal, and 22,767,565 "Broker Non-Votes"[4], representing 35% of Company's then outstanding shares, were recorded. (*Id.*). This means that if the stockholder participation rate at the Annual Meeting is the same as at the previous stockholder meeting, it is unlikely that the Certificate Proposals will be approved if they are deemed "non-routine" matters. In contrast, if Brokers do have discretionary authority to vote uninstructed shares, then the Certificate Proposals are likely to be approved. Had Brokers had such discretionary authority

---

[4] The proposal required only a majority of votes cast for approval and carried on that basis.

with respect to the executive compensation proposal at the June 18, 2019 stockholder meeting, then about 81% of the outstanding shares would have likely been voted in favor of the proposal. (*Id.*). In fact, a proposal to ratify the appointment of the Company's independent public accounting firm, the only routine matter at the June 2019 stockholder meeting, was approved by approximately 85% of the outstanding shares. (*Id.*). This number was achieved because Brokers, exercising their discretionary authority, voted all 22,767,565 uninstructed shares in the affirmative. (*Id.*).

In addition, based on the Company's previous stockholder votes, it is possible that one of the Certificate Proposals is routine and one is non-routine, in which case stockholder inaction would likely result in different votes on the Certificate Proposals. The last time the Company sought stockholder approval of an amendment to the Certificate to increase the number of authorized shares was at the Company's 2013 stockholder meeting, and the proposal was a routine proposal. (¶ 31). Conversely, the last time the Company sought stockholder approval of an amendment to the Certificate to modify the terms of its Preferred Stock was at the Company's 2018 stockholder meeting, and the proposal was a non-routine matter. (*Id.*).

Accordingly, a reasonable stockholder would find it important to know whether the Certificate Proposals are routine or non-routine, and Plaintiff is more likely than not to prevail on the merits of her claims.

## II. PLAINTIFF AND FORTRESS STOCKHOLDERS WILL SUFFER IRREPARABLE INJURY IF THE STOCKHOLDER VOTE PROCEEDS ON THE BASIS OF THE FALSE AND MISLEADING PROXY.

A movant seeking a preliminary injunction need not demonstrate certainty of injury but must only "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC*, 555 U.S. 7, 8 (2008) (emphasis in original). To do so, the movant must show that "absent a preliminary injunction [the movant] will suffer an injury that is neither remote nor speculative,

but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). The Second Circuit has "state[d] a strong preference for injunctive relief in the proxy context." *Greenlight Capital, L.P. v. Apple, Inc.*, Nos. 13-cv-900, 13-cv-976, 2013 U.S. Dist. LEXIS 24716, at *4 (S.D.N.Y. Feb. 22, 2013) (citing *Koppel v. 4987 Corp.*, 167 F.3d 125, 137 -38 (2d Cir. 1999))). As the Second Circuit has explained:

> [W]e do have a strong preference for an injunctive remedy over damages for violations of the proxy rules. The reasons for such a preference are sound: The courts should provide parties with no encouragement to sit on live claims until after a shareholder vote, hoping to collect damages and attorneys' fees from proxy violations that a registrant might willingly correct before the vote.

*Koppel*, 167 F.3d at 137 (citations omitted).

In the absence of injunctive relief requiring Defendants to supplement the Proxy, the adoption of the amendments to the Certificate contemplated by the Certificate Proposals will be difficult, if not impossible to unravel. Implementing the amendment called for by the Share Increase Proposal would allow the Company to immediately increase its authorized share capital by 50,000,00 and begin issuing those shares – actions which would be almost impossible to undo. Likewise, the amendment called for by the Preferred Stock would be difficult, if not impossible, to unwind because it would result in immediate changes to dividend payments made to third parties that would be effectively impossible to recover. Indeed, the injuries that would result from allowing the stockholder votes to proceed are similar to those in *Greenlight Capital, L.P.* In that case, the court found that irreparable injury existed where the plaintiff sought to enjoin a stockholder vote on a proposed amendment to the company's articles of incorporation because, even "if the Court were to issue an injunction at a later date, it is unclear whether or how Apple could unwind shareholder ratified amendments to its Articles—amendments that may

trigger filings with the California Secretary of State, as well as multiple other states' agencies regarding the par value amendment". 2013 U.S. Dist. LEXIS 24716, at *4. Here, allowing the uninformed stockholder vote to proceed would result in the Company adopting two stockholder "ratified" amendments to its Certificate, which would trigger filings with the Delaware Secretary of State, if not other state agencies.

The stockholders face further irreparable injury with respect to the Board members' breaches of their fiduciary duty, as under Delaware law the right to cast an informed vote "can only be truly remedied by a specific, injunctive order mandating the appropriate disclosure before the shareholders are required to vote." *Wayne Cnty. Emples. Ret. Sys. v. Corti*, 954 A.2d 319, 329 (Del. Ch. 2008) ("A preliminary injunction motion is . . . the appropriate mechanism by which to challenge alleged disclosure violations."); *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 360 (Del. Ch. 2008) ("It is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected." (quoting *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001)).

Accordingly, because the harm here would be extremely difficult, if not impossible, to unwind after the votes, irreparable harm has been demonstrated under the federal and Delaware standards. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010); *Wayne Cnty. Emples. Ret. Sys.*, 954 A.2d at 329.

### III.     THE BALANCE OF EQUITIES TIPS IN PLAINTIFF'S FAVOR.

The balance of hardships here tips decidedly in Plaintiff's favor. Without corrective disclosures, Plaintiff and the other Fortress stockholders will be deprived of the fundamental right afforded to all stockholders under Section 14(a) and Delaware law: the right to informed stockholder voting. Indeed, "[a] fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act [] is in the best interests of shareholders and the

shareholding public generally." *St. Louis Police Ret. Sys. v. Severson*, No. 12-cv-5086, 2012 U.S. Dist. LEXIS 152392, at *17 (N.D. Cal. Oct. 23, 2012); *see also In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 601 (Del. Ch. 2007) ("Where a shareholder has been denied one of the most critical rights he or she possesses--the right to a fully informed vote--the harm suffered is almost always an individual, not corporate, harm.").

Further, under Delaware law, a preliminary injunction will issue "if that party proves that this Court's failure to grant the injunction will cause [that party] greater harm than granting the injunction will cause [the other party]." *AM Gen. Holdings LLC v. Renco Grp., Inc.*, C.A. No. 7639-VCN, 2012 Del. Ch. LEXIS 289, at *23 (Del. Ch. Dec. 21, 2012) (citation omitted); *see also Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 358 (D. Del. 1977) (determining "the advantages of doing equity immediately by the issuance of a preliminary injunction are far greater" where it was "unlikely that the deficiencies which appear in the total mix of disclosure can be cured at final hearing by oral or documentary evidence.").

In addition, Plaintiff has moved sufficiently in advance of the Annual Meeting for Defendants to issue disclosures concerning whether the Certificate Proposals are routine or non-routine matters without delaying the stockholder vote on the Certificate Proposals. Moreover, any delay of the stockholder vote is a consequence of Defendants' own failure to make sufficient disclosures in the first place, as the information that Plaintiff seeks was within their possession when they issued the Proxy. *See La. Mun. Police Emples. Ret. Sys. v. Crawford*, C.A. No. 2635-N, 2663-N, 2007 Del. Ch. LEXIS 28, at *1 (Del. Ch. Feb. 13, 2007) ("in considering the balance of equities between plaintiffs and defendants, it is relevant to note that any wounds to defendants are entirely self-inflicted").

## IV.   THE PUBLIC INTEREST FAVORS DISCLOSURE OF MATERIAL INFORMATION TO INVESTORS.

The public interest is generally served by encouraging market participants to disclose

material information prior to stockholder votes. *See generally St. Louis Police Ret. Sys.*, 2012 U.S. Dist. LEXIS 152392, at *17. At the same time, there is no conceivable harm to the public that would result here from a short delay of the stockholder vote on the Plan Proposal. *See generally SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n. 1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest.")

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a preliminarily injunction, substantially in the form filed herewith, enjoining the stockholder vote on the Certificate Proposals.

Respectfully submitted,

Dated: May 19, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: ___/s Gloria Kui Melwani___
Benjamin Kaufman (kaufman@whafh.com)
Gloria Kui Melwani (melwani@whafh.com)
270 Madison Avenue
New York, NY 10016
(T) 212 545-4600
(F) 212-686-0114

*Attorneys for Plaintiff*

OF COUNSEL:

**FIELDS KUPKA & SHUKUROV LLP**
William J. Fields (wfields@fksfirm.com)
Christopher J. Kupka (ckupka@fksfirm.com)
Samir Shukurov (sshukurov@fksfirm.com)
1370 Broadway, 5th Floor – #5100
New York, New York 10018
(T) 212.231.1500
(F) 646.851.0076